**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SAMANTHA APRIL HALL, | ) | CASE NO. 1:25-CV-02166-CEH |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | **MEMORANDUM   OPINION   AND** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **ORDER** |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Samantha April Hall ("Hall" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 8). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and OVERRULES Plaintiff's Statement of Errors.

## II. Procedural History

On July 10, 2023, Hall filed an application for DIB, alleging a disability onset date of August 24, 2021. (ECF No. 7, PageID #: 37). The applications were denied initially and upon reconsideration, and Hall requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On July 18, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.* at PageID #: 78-102). On August 21, 2024, the ALJ issued a written decision finding Hall was not disabled. (*Id.* at PageID #: 37-51). The ALJ's decision

1

became final on August 13, 2025, when the Appeals Council declined further review. (*Id.* at

PageID #: 28-30).

On October 9, 2025, Hall filed her Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 11). Hall

asserts the following assignments of error:

> (1) The ALJ erred at Step Two of the Sequential Evaluation when she failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments and related limitations when forming the RFC.
>
> (2) The ALJ erred at Step Three of the Sequential Evaluation when she failed to comply with the relevant Social Security Rulings, 14-2p and 19- 2p, and find that the combination of Plaintiff's obesity and diabetes equaled a listing.
>
> (3) The ALJ erred when she failed to find that the findings of the Functional Capacity Evaluation were persuasive.

(ECF No. 9 at 1).

## III. Background

### A. Disability Allegations
The ALJ summarized Hall's disability allegations:

> The claimant alleged disability due to type one diabetes, carpal tunnel syndrome, neuropathy, obstructive sleep apnea and on CPAP, arthritis, Pilonidal disease, Sicca syndrome, insomnia, PTSD, and depression (Ex. 4E/2). She noted she has been working since age 15 but complications from diabetes, arthritis, and other complications and issues have slowly been "chipping away" her ability to work, has hung on as long as she could, and now is down to just PRN (Ex. 4E/10). The claimant alleged that in November 2023 her toenail needed to be removed due to recurring infections and pain in her toe caused more difficulty getting around and doing day-to-day household tasks (Ex. 7E/2, 4).
>
> The claimant completed an Adult Function Report and alleged conditions affect her ability to work due to the time and attention required to control diabetes and described having to be gone for 15 to 30 minutes while working depending on what needs to be

addressed and uses an insulin pump at all times (Ex. 5E). Arthritis, trigger finger, carpal tunnel, and diabetic neuropathy makes use of hands more difficult while working and has swelling, pain, cramping up and freezing, and numbness in hands and feet. Pilonidal cysts/surgery limit the amount of time she can stay sitting and can barely walk even after a five-hour shift. The claimant also indicated difficulty with personal care, such as buttoning and tying shoes, holding a brush, comb, or hair dryer; cooking; writing and typing; is unable to take laundry up and down stairs; and holding books is challenging and can only do this shortly. She can lift five to 10 pounds, stand for a short period, walk one block, sit 15 to 30 minutes, and climb ½ flight of stairs. The claimant also noted she uses an insulin pump at all times.

(ECF No. 7, PageID #: 43-44).

### B. Relevant Medical Evidence

The ALJ also summarized Hall's health records and symptoms:

The record referenced diabetes mellitus type I, peripheral neuropathy, OSA, Pilonidal disease, Sicca syndrome, and inflammatory arthritis. In addition, the claimant's body mass index (BMI) has measured in the obesity range from approximately 36.06 kg/m2 to 41.57 kg/m2 (Ex. 1F/17- 196, 2F/17-155, 5F/38, 7F/19, 24-25, 49, 8F/48, 54). I considered the effects of the claimant's obesity in reducing the residual functional capacity pursuant to SSR 19-2p. It can reasonably be concluded that the claimant's obesity would exacerbate symptoms causing serious physical limitations; however, the claimant generally maintained intact system functioning, and the claimant's course of treatment consisted of outpatient, sporadic emergency department or urgent care visits, and other instructions, for example, low impact weightbearing exercise as tolerated, heat/ice, and to avoid aggravating factors.

The claimant presented for follow-up outpatient visits regarding tenosynovitis, +ANA, and inflammatory arthritis (Ex. 1F, 2F). She reported taking medication and hands swelling and locking, chronic pain in knees right greater than left, hands, and back, pain 4/10, and 15 to 20 minutes of morning stiffness (Ex. 1F/12, 2F/12). The claimant also reported doing yoga and walking for exercise and was busy caring for her three-year old daughter (Ex. 1F/12-13, 2F/12). She overall was mildly uncomfortable but happy with rheumatology care.

The claimant also reported intermittent numbness and tingling in both hands and wrists with night awakenings (Ex. 7F/38). Treatment notes referenced a history of carpal tunnel syndrome of the left wrist;

3

however, updated EMG testing of the left lower and upper extremities from February 2024 revealed 1. Chronic, neurogenic motor unit changes in the left abductor hallucis muscle, and the presence of chronic neurogenic motor unit potential changes limited to an intrinsic foot muscle such as this is of unclear clinical significance in isolation and may be related to local foot trauma secondary to footwear; 2. No evidence of generalized sensorimotor polyneuropathy affective either extremity, this is based on normal sensory studies, normal latencies, and normal velocities of all nerves tested, and a small fiber neuropathy could not be excluded based on this study; 3. No evidence of a left median nerve compressive mononeuropathy (carpal tunnel syndrome); and 4. No evidence of a left L3-S1 lumbosacral radiculopathy (Ex. 7F/91-93). In addition, the claimant saw podiatry for diabetic foot care and some issues with foot ulcers but healing with medication (Ex. 1F/12). Full diabetic foot examinations indicated bilateral bunions and paronychia of the right toe but otherwise showed intact sensation, no edema, and full range of motion for all passive foot and ankle, and overall assessment indicated stable diabetes and to continue with diabetic home foot care and routine six-month or annual follow up (Ex. 5F/13-14, 7F/18).

Examinations demonstrated some deficits but systems generally within normal limits. At times, the claimant showed mild congestion, maxillary sinus tenderness, and/or wheezing or rhonchi, for example, with acute upper respiratory infection (Ex. 1F/63, 2F/63, 5F/29-31, 7F/25, 8F/54). The claimant otherwise presented as oriented with regular heart rate and rhythm, lungs clear to auscultation, normal breath sounds and air entry, no cervical adenopathy, no abdominal tenderness, no extremity deformities or edema, no musculoskeletal swelling or tenderness, normal range of motion, no neurological focal deficit, 2+ deep tendon reflexes throughout, grossly intact sensation, 5/5 motor strength and tone throughout, and 0/18 tender points (Ex. 1F/17, 30, 37, 41, 60-61, 63, 71, 125, 2F/17, 30, 41, 49, 61, 63, 125, 5F/29, 7F/15, 17, 20, 25, 8F/54, 73). Further, the claimant generally showed normal gait, normal toe and heel walk, and no assistive device (Ex. 1F/17, 37, 39, 42, 71, 116, 125, 2F/17, 37, 40, 42, 71, 115, 125, 5F/21, 27, 7F/15, 42, 8F/54, 96).

During a new evaluation and follow-up with an orthopedic specialist in April 2024, the claimant endorsed a history of multiple trigger finger releases and left carpal tunnel release, current locking of the ring and middle fingers, and discomfort worse with full extension of the wrist, bending fingers, or attempting to make a fist (Ex. 7F/11, 8F/69). She noted to be right hand dominant. Imaging showed PA

4

lateral and oblique of the left hand with well-maintained joint spaces, neutral ulnar variance, and no acute fracture (Ex. 8F/73, 89). Examination of the right and left hand shows no swelling or erythema, and specifically left hand showed intact skin, multiple well-healed incisions over her palm, tenderness to palpation over the left ring A1 pulley, no tenderness to palpation over the long and ring finger MPs, no pain with passive motion of the MPs of the long and ring fingers, ulnar motor, and sensation intact, no locking could be reproduced throughout range of motion, and the claimant could make a full fist (Ex. 7F/12, 8F/73). The claimant's treatment plan indicated she could have a sagittal band rupture but needed further evaluation of the extensor tendons with a dynamic ultrasound, especially since this could not be reproduced on exam that day (Ex. 8F/73, 89).

The claimant's continued course of treatment consisted of outpatient visits, insulin pump, testing, monitoring, and a medication regimen. Recent progress notes from May 2024 indicated diabetes without complications and improvement (Ex. 8F/55).

(ECF No. 7, PageID #: 45-46 (footnote omitted)).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: diabetes mellitus, peripheral neuropathy, obstructive sleep apnea (OSA), Pilonidal disease, Sicca syndrome, inflammatory arthritis, and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequently push/pull and operate foot controls with the left lower extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, crawl; have frequent exposure to extreme cold, extreme hot, or wetness; and never be exposed to hazards (unprotected heights or dangerous machinery).

6. The claimant is capable of performing past relevant work as a Phlebotomist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 24, 2021, through the date of this decision (20 CFR 404.1520(f)).

(ECF No. 7, PageID #: 39-41, 43, 49, 51).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in

6

determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Hall raises three issues on appeal, arguing that (1) the ALJ erred at step two when she failed to properly apply the criteria of Social Security Ruling ("SSR") 96-8p and consider all of Plaintiff's impairments and limitations when forming the RFC; (2) the ALJ erred at step three when she failed to consider SSR 14-2p and SSR 19-2p and find that the combination of Plaintiff's obesity and diabetes equaled a listing; and (3) the ALJ erred when she failed to find a Functional Capacity Evaluation authored by James McDonald persuasive.  (ECF No. 9 at 1).

#### 1. Consideration of All Impairments

Plaintiff first argues that the ALJ "erroneously failed to find that [her] depression and

anxiety were also severe impairments," highlighting records indicating treatment for depression and her own testimony that depression interfered with her ability to concentrate and complete activities. (ECF No. 9 at 10). Plaintiff argues "the ALJ failed to include anything in the RFC related to Plaintiff's depression and/or anxiety" and such "was in error as Plaintiff's psychological impairments caused more than a minimal limitation on her ability to perform work related activities." (*Id.* at 11).

The Commissioner responds that the "ALJ reasonably found Plaintiff's depression and anxiety to be non-severe" after considering the relevant evidence, including Plaintiff's symptoms and activities, mental status examinations, and nature of her treatment. (ECF No. 11 at 12). The Commissioner argues that "a diagnosis alone of an impairment is insufficient" to establish such is severe and Plaintiff is merely asking the Court to reweigh the evidence in her favor. (*Id.* at 12-13). Additionally, the Commissioner argues that the ALJ considered Plaintiff's mental impairments when crafting the RFC because the ALJ noted consideration of all impairments, explicitly stated that the RFC reflected the degree of limitations found in the mental functional analysis, and considered all of Plaintiff's symptoms when assessing the RFC. (*Id.* at 13-14).

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe if it does not "significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The Sixth Circuit "construes step two as a *de minimis* hurdle, intended to 'screen out totally groundless claims.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citation omitted). When an ALJ determines that one or more of a claimant's impairments are severe, the ALJ must proceed to consider the "limitations and restrictions imposed by *all* of an individual's impairments, even those that are not severe." *Id.* (citation modified). Typically, "any perceived failure to find

8

additional severe impairments at step two [does] not constitute reversible error" if the ALJ considered all the claimant's impairments in the remaining steps.  *Id.* (citation modified).

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted). A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 877.

It is undisputed that Plaintiff was diagnosed with anxiety and depression, the ALJ considered these impairments at step two, and the ALJ determined these impairments were not severe. The ALJ articulated a reasonable explanation for why this determination is consistent with substantial evidence in the record, and thus this conclusion is not an error.  At step two, the ALJ evaluated each of the four functional areas set forth in paragraph B, and noted that both medical records and Plaintiff's self-reported daily activities indicate that she experiences only mild limitations as a result of her mental health symptoms. (ECF No. 7, PageID #: 40-41). For example, the ALJ noted that Plaintiff's medical providers consistently noted that she was pleasant, cooperative, alert and oriented, with adequate insight and judgment and normal thought process

and content, attention and concentration. (*Id*., citing ECF No. 7, PageID #: 359, 362, 370, 377, 390, 393, 400, 433, 445, 555, 575, 580, 602, 639, 921, 943). The psychiatric consultative examiner described her as "cooperative and friendly throughout the entire interview," with adequate insight and social judgment, and good attention and concentration. (*Id*. at PageID #: 851-52). Plaintiff routinely "provided medical history, answered questions, and was able to understand treatment plans and instructions," as well as independently managing her medications and medical appointments. (*Id*. at PageID #: 362, 401, 623, 628, 636). When contacted by a social worker referred by her endocrinologist, Plaintiff "decline[d] needing assistance with resources or access to assistance programs," and the social worker "agree[d] that no further assistance is required at this time." (*Id*. at PageID #: 953). The ALJ also noted Plaintiff "has no difficulty getting along with coworkers or supervisors, and is able to leave her home independently." (*Id*. at PageID #: 40-41, citing *Id*. at PageID #: 853).

Further, the ALJ based her assessment of the severity of Plaintiff's mental health symptoms on records showing that Plaintiff was able to manage daily activities independently, including "taking care of her personal care, kids, and household chores, resting, watching television, doing crafts, and playing games." (*Id*., citing PageID #: 846-47, 851-2.)  She cited medical treatment records and self-reports that described Plaintiff as "busy caring [for her] 3/yo daughter," "busy with new puppy." (*Id*., citing PageID #: 341, 347, 373, 376, 378, 404, 415, 550.) After leaving employment, she described herself to medical providers as a "stay-at-home mom [w]ith 2 kids," "a busy mom," and "a busy foster mom with lots of stress." (*Id*., citing PageID #: 415, 422, 432, 631, 641.) The ALJ also noted Plaintiff's testimony that she "has a Driver's license, drives, cooks, cleans, and orders groceries online," and was able to manage her personal care. (*Id*.)

In asserting that the ALJ's evaluation of the severity of her mental health symptoms was

10

erroneous, Plaintiff notes that she received psychotherapy for symptoms of anxiety and depression, and the consultative psychologist assessed unspecified depressive and anxiety disorders in his examination report. (ECF No. 9 at 10). These undisputed facts were noted by the ALJ in explaining her decision. (ECF No. 7, PageID #: 40-41). Plaintiff also noted that she testified that her symptoms were more severe than the ALJ determined. (ECF No. 9 at 10). This, too, is also acknowledged and addressed in the ALJ's decision. (ECF No. 7, PageID #: 40-41). Thus, Plaintiff's argument that the ALJ failed to adequately support her finding that Plaintiff's depression and anxiety are not severe impairments is without merit.  Plaintiff does not point to relevant evidence that the ALJ overlooked or failed to consider.  Instead, she asks the Court to reweigh the evidence and reach a different outcome, which is beyond the scope of this Court's review. Rather, "as long as the ALJ's findings were, as here, supported by substantial evidence, [a court] may not second-guess them, even if substantial evidence would support the opposite conclusion." *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025); *see Greene ex rel. Green v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is no sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion."). The Court concludes that substantial evidence supports the ALJ's determination that the *de minimis* hurdle at Step Two was not met, and therefore her finding that Plaintiff's anxiety and depression were not severe impairments must be upheld.

Next, Plaintiff argues that even if the ALJ's determination at step two that her mental health conditions were non-severe is supported, the ALJ "clearly failed" in her duty to consider those impairments at subsequent stages of her analysis, necessitating remand of this case. (ECF No. 9 at

11

11-12). In crafting the RFC, the ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id*. at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon when he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted). A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id*. at 877.

Here, the basis for Plaintiff's assertion that the ALJ failed to consider evidence of mental impairment in explaining her RFC determination is puzzling, given that the ALJ's step four analysis explicitly addresses the findings of the state agency psychological consultants and the psychological consultative examiner, all of which she found persuasive. (ECF No. 7, PageID #: 48). The ALJ also noted that the record showed "limited evidence of outpatient treatment for mental health symptoms" and "examinations generally showed normal mental status with full orientation, cooperative behavior, and ability to provide information and understand and follow treatment plans, including medications, exercise plans, and referrals." (*Id*.) The ALJ's decision not to include mental health-related limitations in her RFC determination is clearly explained, supported by evidence in the record, and logically coherent. This Court cannot reweigh evidence to substitute its judgment for that of the ALJ. *Napier*, 127 F.4th at 1007. Thus, Plaintiff's assertion that the ALJ failed to consider evidence relating to her mental health impairments after step two

12

is without merit.

### 2.  Listing Equivalence

Plaintiff next challenges the ALJ's determination that none of her impairments met or equaled a listed impairment.  She argues that the ALJ "failed to consider [her] diabetes with neuropathy according to Ruling 14-2p," asserting that the combination of her testimony, statements from herself and her husband, and the medical evidence "established that she had diabetic neuropathy which caused problems with her feet as well as her upper extremities."  (ECF No. 9 at 13-16).  She also asserts that the ALJ "failed to analyze Plaintiff's diabetes throughout the sequential evaluation." (*Id.* at 13). Additionally, Plaintiff argues that, while the ALJ acknowledged her obesity, she "failed to consider the combination of Plaintiff's diabetes and her obesity" and "failed to provide any documentation which supported her erroneous conclusion that Plaintiff could still perform work at the light level of exertion."  (*Id.* at 17-18).

The Commissioner responds that the ALJ made clear that she considered each of these impairments in accordance with the regulations, and clearly explained the evidentiary basis for her determination. (ECF No. 11 at 14-16.)

At step three, an ALJ must consider whether a claimant's medical impairments meet or equal one of the listed impairments.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet a listing, the claimant "must satisfy all of the [listing's] criteria."  *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* If the ALJ's listing finding is supported by substantial evidence, based on the record as a whole, the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *4. Moreover, if the ALJ's listing finding is not supported by substantial evidence, the error is harmless if the claimant cannot

show that his impairments met or medically equaled a listing. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

SSR 14-2p states that Diabetes Mellitus (DM) is no longer a listed impairment under the regulations. SSR 14-2p, 2014 WL 2472008, at *6. However, it explains that "the effects of DM, either alone or in combination with another impairment(s), may meet or medically equal the criteria of a listing in an affected body system(s)." *Id.* At step three, the ALJ explained her determination that Plaintiff did not meet or medically equal a listing under SSR 14-2p as follows:

> Regarding the claimant's diabetes mellitus, I evaluated this condition pursuant to 9.00 and SSR 14-2p. The symptoms of such disorders are evaluated under the respective listings for the affected body systems. The record showed that the claimant's diabetes did not result in any complications or end organ damage that would meet or equal any of the listings referenced under listing 9.00(B)(5). In this case, the record included no evidence of the requisite system deficits to support a listing-level impairment (Ex. 1F-4F, 5F, 7F, 8F).

(ECF No. 7, PageID #: 42-43).

Contrary to Plaintiff's assertion that she failed to address this impairment later in her analysis, the ALJ elaborated on the basis for her determination at step four, explaining that the "continued course of treatment consisted of outpatient visits, insulin pump, testing, monitoring, and a medication regimen. Recent progress notes from May 2024 indicated diabetes without complications and improvement." (*Id.* at PageID #: 46). Indeed, in April and May of 2024, examining physicians described her diabetes as "stable," "without complications," and "improving control."  (*Id.* at PageID #: 919, 1064).

The ALJ also considered Listing 11.14 – peripheral neuropathy.  She concluded:

> Listing 11.14 requires disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or marked limitation in physical functioning and in one of the functions listed in 11.14(B), including understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing

14

oneself.

\*\*\*

> The claimant generally showed normal gait with no assistive device (Ex. 1F/17, 37, 39, 42, 71, 116, 125, 2F/17, 37, 40, 42, 71, 115, 125, 5F/21, 27, 7F/15, 42, 8F/54, 96). In addition, the claimant has maintained the ability to perform activities of daily living, show cooperative behavior, provide medical history, answer questions, follow instructions and a treatment plan, and routinely presented as alert and oriented with appropriate mood and affect (Ex. 5E, 1F/21- 116, 2F/21-117, 3F/15, 4F/2, 4, 5F/13-27, 7F/17-55).

(*Id*. at PageID #: 42). As discussed in the previous section, substantial evidence in the record supported the ALJ's conclusion that Plaintiff was able to manage daily activities independently and had only minimal impairment in the four domains of mental functioning. Further, with regard to her physical impairment, numerous treatment notes documented a normal gait, grossly intact sensation, and normal range of motion despite her neuropathy symptoms. (*See, e.g.,* ECF No. 7, PageID #: 686, 882, 918, 1064).

Finally, the ALJ discussed Plaintiff's obesity under SSR 19-2p, noting that "Upon review of the facts of this case, the claimant's obesity does not cause another impairment or combination of impairments to rise to listing-level severity, and the claimant has maintained system functioning within normal limits." (*Id*.) At step four, the ALJ elaborated on the facts supporting this conclusion, explaining:

> It can reasonably be concluded that the claimant's obesity would exacerbate symptoms causing serious physical limitations; however, the claimant generally maintained intact system functioning, and the claimant's course of treatment consisted of outpatient, sporadic emergency department or urgent care visits, and other instructions, for example, low impact weightbearing exercise as tolerated, heat/ice, and to avoid aggravating factors.

(*Id*. at PageID #: 45).

Plaintiff asserts that the ALJ failed to properly consider her diabetes with neuropathy according to Rule 14-2p, because "the extent of the ALJ's analysis ... was that Plaintiff did not

15

have any complications or end organ damage," and "failed to relate Plaintiff's neuropathy with her diabetes." (ECF No. 9 at 13-14). She points to evidence of medical examinations which repeatedly showed symptoms of diabetes, obesity and neuropathy, and notes that her testimony and function reports that she and her husband completed provide evidence of how these symptoms impacted her ability to function. (*Id*. at 14-15).  However, as the Commissioner points out, the ALJ discussed this evidence, and clearly explained her finding that the functional limitations supported by the medical evidence were less severe than Plaintiff's testimony – both in the hearing and in the function report – indicated. (ECF No. 11 at 14-16). Further, as the Commissioner notes, she "did not cite any relevant evidence to demonstrate that she met the burden of meeting or medically equaling a listing."  (*Id.* at 16).

This Court agrees that Plaintiff fails to explain what more the ALJ was required to do or point to any objective evidence of how obesity combined with her other impairments to impose limitations on her. Plaintiff bears the burden at Step Three. She "had the burden of showing specifically how [her] obesity, in combination with other impairments, limited [her] ability to a degree inconsistent with the ALJ's RFC determination." *Foss v. Comm'r of Soc. Sec.*, No. 1:16CV1907, 2017 WL 2912524, at *8 (N.D. Ohio June 20, 2017), *report and recommendation adopted by* 2017 WL 2908857 (N.D. Ohio July 7, 2017) (alterations in original) (citations omitted). Claimant did not meet this burden. *See id.* (stating that the claimant did not meet her burden where she failed to point to specific evidence of how the ALJ's RFC limitation was inconsistent with her actual impairments). The Court, therefore, finds no error.

### 3.  Consideration of Functional Capacity Evaluation

Finally, Plaintiff challenges the ALJ's finding that a Functional Capacity Evaluation completed by physical therapist James McDonald was not persuasive.  (ECF No. 9 at 19).

16

Specifically, Plaintiff argues the ALJ's conclusion that "testing was inconsistent with other examinations which showed full strength and normal gait" was incorrect because "[a]lthough Plaintiff had a normal gait during examinations, on examinations she was found to have hand and wrist swelling/tenderness." (*Id.* at 20). Additionally, Plaintiff argues the ALJ "failed to address the persuasiveness" of the opinion. (*Id.* at 20-21).

The Commissioner responds that in finding the opinion unpersuasive, "the ALJ analyzed the opinion's supportability and consistency, and did all that was legally required." (ECF No. 11 at 19). The Commissioner asserts that the ALJ "properly addressed supportability by noting that this was a limited, single evaluation with no prior treatment history" with mostly unremarkable findings. (*Id.* at 18-19). As to consistency, the Commissioner points to the ALJ's discussion of other records and evaluations that do not reflect the same significant limitations as McDonald's opinion. (*Id.* at 19). The Commissioner argues that the ALJ's evaluation of McDonald's opinion is supported by substantial evidence. (*Id.* at 20-21).

Before proceeding to step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). Under the current regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c). The ALJ is required to explain how he considered the supportability and

17

consistency of a source's medical opinion, but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2).  Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be."  20 C.F.R. § 404.1520c(c)(1)-(2).

In February 2024, physical therapist James McDonald completed both a "Physical Medical Source Statement" and a "Functional Capacity Evaluation" evaluating Plaintiff's functional capacity for the purpose of completing disability forms. (ECF No.7, PageID #: 898-901, 995-1003).[1] In the "Functional Capacity Evaluation," Mr. McDonald provided both the testing data and a "summary of findings" which included his opinion as to Plaintiff's physical functional capacity. (*Id*.) The ALJ explained her determination that the opinion portion of this evidence was not persuasive as follows:

> The claimant was referred to Mr. McDonald by Eileen Herbert, M.D., the claimant's primary care provider, after the claimant presented to her office on January 24, 2024 with disability forms to complete (Ex. 7F/46). Dr. Herbert indicated the claimant reported her neuropathy of hands and feet along with arthritis prevent her from employment, was trying to pursue disability (Ex. 7F/49). Examination was unremarkable with no extremity edema, no erythema, warmth, or synovial thickening of MCP joints of hands, although the claimant reported these were all tender, and Dr. Herbert recommended a functional assessment by physical therapy and evaluation by neurology. The claimant subsequently presented for physical therapy evaluation on February 1, 2024, and Mr. McDonald opined the claimant can sit 30 minutes at one time and stand 30 minutes at one time before needing to change positions (get up, sit down, walk around); stand/walk less than two hours and sit about four hours in a five-hour workday; lift and carry less than 10 pounds frequently and 20 pounds occasionally; perform bilateral hand, finger, and reaching activities 30 percent of time during an eight-hour workday; needs

---

[1] A portion of this document repeats at ECF No.7, PageID #: 939-946 and 1004-1010.

> unscheduled breaks every 30 minutes for 10 minutes due to pain; and would be absent more than four days per month due to impairments or treatment. I find this opinion not persuasive because Mr. McDonald noted a limited, single evaluation and no treatment history. In addition, the degree of limitations, for example, regarding sit, stand, walk, lift and carry are inconsistent with and not supported by other examinations that showed full strength and normal gait (Ex. 1F/17, 37, 39, 42, 71, 116, 125, 2F/17, 37, 40, 42, 71, 115, 125, 5F/21, 27, 7F/15, 42, 8F/54, 96). Further, the opinion regarding unscheduled breaks and absenteeism is inconsistent with a conservative course of treatment that consisted of outpatient visits, medication regimen, testing, and referrals for evaluation (Ex. 1F/12-13, 2F/12, 5F/13-14, 7F/18, 8F/55, 73, 89).

(ECF No.7, PageID #: 48-49).

Plaintiff asserts that the ALJ "incorrectly focused on the Medical Source Statement" and did not adequately address the persuasiveness of the Functional Capacity Evaluation. (ECF No. 9 at 20-21). However, the ALJ did explain that she found Mr. McDonald's opinion "not persuasive" in part because it was based on a "a limited, single evaluation," which is the Functional Capacity Evaluation at issue here. (ECF No.7, PageID #: 48-49). Plaintiff also does not identify which of the "numerous tests" in that evaluation she believes supported the restrictions in the Medical Source Statement, and relies on the broad statement that Plaintiff put forth "full effort and was consistent throughout the testing." (ECF No. 9 at 20-21). Mr. McDonald's testing indicated that Plaintiff had 4+ or 5/5 range of motion and strength in her lower extremities, 4 or 5/5 range of motion and strength in her upper extremities, consistent with his opinion that she could reach forward, above her shoulders, bend and squat frequently. (ECF No.7, PageID #: 1007, 1009). He opined that she could walk occasionally although he noted she performed the walking test at the average pace with an even stride pattern, and non-antalgic gait. (*Id*.) He opined she should grasp occasionally and avoid firm grasping based on her reported pain symptoms, although he observed no mechanical deficit and noted "no clinical objective findings were noted to support this increase in pain which may suggest an unreliable pain report." (*Id*. at PageID #: 1008). He opined that her fine motor coordination should be limited to an occasional basis, although his testing in this area

19

was "unable to be scored within the tests normative scoring system." (*Id*.) For pinch testing and gross motor testing, Mr. McDonald provided Plaintiff's results without a comparison to the normative scoring system. (*Id*.)  Thus, the basis for Plaintiff's broad contention that a more thorough discussion of this testing data would have altered the ALJ's opinion is unclear.

In contrast, the ALJ noted that the conclusions reached by Mr. McDonald, who saw Plaintiff only once for the purpose of the functional evaluation, were inconsistent with specific medical evidence from her treatment record, and not supported by other record evidence. (ECF No.7, PageID #: 49). For example, examinations frequently found her with full motor function, intact sensation, normal range of motion, normal heel and toe walk, normal gait, normal muscle tone, and no swelling, rigidity, tenderness or instability in any upper or lower extremity joints. (*Id*. at PageID #: 346, 366, 368, 370, 445, 454, 916). A diabetic foot exam in November 2023 found Plaintiff reporting numbness and tingling, but on examination, the podiatrist found no balance issues or instability, no foot, muscle or low back pain, good foot and ankle joint range of motion, light touch intact. (*Id*. at PageID #: 865-67.)  She advised Plaintiff to return in a year. (*Id*.) These results were largely unchanged in her next foot examination in April 2024. (*Id*. at PageID #: 917-19).  In addition, as the ALJ noted, Mr. McDonald's opinion that she was limited to light work, with standing no more than 1 hour and 14 minutes, is inconsistent with Plaintiff's reports to her medical care providers that she engaged in walking and yoga for exercise, although she "still had difficulty doing a few yoga poses/moves," had chronic knee pain at a level of 4/10 with minimal morning stiffness, and was "mildly uncomfortable." (ECF No.7, PageID #: 341, 450).

Plaintiff points to record evidence the ALJ allegedly overlooked, including testing indicating occasional tenderness and swelling in her hand and wrist, dental problems, and ingrown toenails. (ECF No. 9 at 20). However, this is insufficient to establish a lack of

20

substantial evidence. "[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). The Court concludes that there was sufficient evidence in the record to allow a reasonable mind to accept the ALJ's conclusion, and therefore her assessment of the persuasiveness of Mr. McDonald's opinion must be upheld.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

**IT IS SO ORDERED.**

Dated: June 4, 2026

*s/ Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE